Filed 2/17/21  P. v. Paschal CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B301482 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA012592) |
| v. | |
| BENJAMIN PASCHAL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rogelio G. Delgado, Judge. Reversed and remanded with directions.

Jonathan E. Demson, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Benjamin Paschal's petition for resentencing under Penal Code section 1170.95 was summarily denied.[1]  As defendant was not ineligible for relief as a matter of law, we reverse.

## *FACTUAL AND PROCEDURAL BACKGROUND*

### 1.    *The Underlying Crime, Conviction and Appeal*

Defendant was convicted of the provocative act murder of Charles Thomas, his accomplice in an attempted robbery, who was killed by the robbery victim.

Defendant and Thomas had agreed to rob Christopher Butler, a marijuana dealer.  Butler lived with his four-year-old son.  On the day of the planned robbery, Butler had a friend, Stephen Guzman, to his apartment for dinner.  After dinner, when Butler opened the door to let Guzman out, defendant and Thomas knocked on the door asking to buy marijuana.  Butler said he did not have any and attempted to close the door.  Defendant pulled a gun and told Butler it was a robbery.

Defendant ordered Butler and Guzman to get on the floor.  The robbers began to beat and kick Butler and defendant threatened to shoot them.  Butler told defendant not to shoot and said he would give them anything they wanted.  Butler told them that his son was in the bedroom.  At this point, the four-year-old boy ran crying into the living room where the four men were located.  Defendant threatened to shoot the little boy if Butler did not get him to keep quiet.  Defendant turned the lights off.  Guzman grabbed the screaming boy and covered him with his body.

---

[1]    Unless otherwise indicated, all undesignated statutory references are to the Penal Code.

2

Defendant told Thomas to tape Guzman and Butler with duct tape. Thomas attempted to tape Butler's hands but was unable to do so. Defendant then said that he would tape up the two men. He told Thomas to shoot Butler if Butler so much as moved. As defendant was handing the gun to Thomas, Butler lunged at the two men in an effort to protect his son and friend. Defendant fired the gun; the shot hit the wall. In the ensuing struggle, defendant dropped the gun and Guzman recovered it. Guzman, fearing for his life, shot defendant and Thomas. Thomas died from his wounds; defendant survived.

Defendant was charged by information with the murder of Thomas (§ 187), the attempted robbery of Butler and Guzman (§§ 664/211), burglary (§ 459), and conspiracy to commit robbery (§ 182, subd. (1)).[2] Defendant was convicted as charged. He was sentenced to 25 years to life for the murder, with a consecutive 4-year term for conspiracy.

On appeal, defendant's conviction was affirmed. (*People v. Paschal* (Nov. 9, 1993, B071087) [nonpub. opn.].) Defendant had argued, among other things, that there was insufficient evidence of murder. A prior panel of this appellate court specifically held the evidence established "that Thomas was killed by Guzman in response to defendant's provocative acts."

**2.    *Defendant's Section 1170.95 Petition***

On March 13, 2019, defendant filed a form petition for resentencing under section 1170.95, which allows defendants convicted of murder under the felony-murder rule or natural and

---

[2]    A codefendant, Anthony Moore, was also charged. Moore did not go to the apartment with defendant and Thomas, but had been involved before and after the incident at the Butler apartment.

3

probable consequences doctrine to seek resentencing under certain circumstances. The petition was filed by private counsel; and defendant did not check the box requesting appointment of counsel.[3]

At the district attorney's request, the hearing on defendant's petition was continued to August 21, 2019. On that date, the district attorney filed a response to the petition. The opposition argued that section 1170.95 was unconstitutional and, in any event, did not apply to provocative act murder. The district attorney's response attached as exhibits (1) the Court of Appeal opinion affirming defendant's conviction and (2) the entirety of the jury instructions given at defendant's trial.

The jury instructions show that defendant's jury was instructed on provocative act murder in the language of CALJIC No. 8.12.[4] However, the jury was also instructed on the doctrine

---

[3] Defendant had counsel at the hearing, and does not argue otherwise on appeal. Accordingly we need not address the Attorney General's argument that any failure to appoint counsel was harmless error.

[4] The instruction, as given, was as follows: "Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] A homicide committed during the commission of a crime by a person who is not a perpetrator of such crime, in a reasonable response to an intentional provocative act by a perpetrator of the crime, is considered in law to be an unlawful killing by the perpetrators of the crime. Malice is implied when the provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life. [¶] 'Aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state

4

of natural and probable consequences, in the language of CALJIC No. 3.02.[5]

---

must precede rather than follow the provocative act. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. The crime of burglary or attempted robbery was committed; [¶] 2. During the commission of such crime, a person committing the crime also intentionally committed a provocative act; [¶] 3. The provocative act was deliberately performed with knowledge of the danger to and with conscious disregard for human life; and [¶] 4. Such act was sufficiently provocative that the victim of the burglary or attempted robbery in a reasonable response thereto killed a perpetrator of such crime[.] [¶] Murder which occurs during the commission or attempt to commit the crime of robbery or burglary when there was in the mind of the perpetrators of such crime, the specific intent to commit burglary or robbery, is murder in the first degree. [¶] Murder which is not of the first degree is murder of the second degree. [¶] If you are convinced beyond a reasonable doubt that the crime of murder has been committed by a defendant, but you have a reasonable doubt whether such murder was of the first or of the second degree, you must give defendant the benefit of the doubt and return a verdict fixing the murder as of the second degree."

[5]      The instruction, as given, was as follows: "One who aids and abets is not only guilty of the particular crime aided and abetted but is also liable for the natural and probable consequences of the commission of such crime. [¶] In order to find the defendant guilty of the crime of murder, as charged in Count[] 1, you must be satisfied beyond a reasonable doubt that the crime of attempted robbery [and] burglary was committed, and if so, that the defendant is guilty of attempted robbery and burglary as an aider and abettor, and that the crime of murder charged in Count[] 1 was a natural and probable consequence of the commission of the crime of attempted robbery and burglary."

A hearing was held on defendant's petition. Defense counsel argued that section 1170.95 was, in fact, constitutional, and the trial court agreed. However, as the district attorney's opposition had been filed on the day of the hearing, and neither the court nor defense counsel had had an opportunity to review it, the court continued the hearing to September 10, 2019 for a determination of defendant's eligibility for relief under the statute.

Defense counsel filed no reply prior to the continued hearing. However, counsel orally argued that defendant was eligible for relief because he had been "engaged in a low-level robbery," "was not the trigger person," and lacked the intent to kill.

The trial court denied defendant's petition, on the basis that he had been convicted of a provocative act murder, and that provocative act murder is outside the realm of section 1170.95, as it relies on neither the felony-murder theory nor the natural and probable consequences doctrine. Defendant filed a timely notice of appeal.

## DISCUSSION

On appeal, defendant argues that the court erred in concluding that section 1170.95 does not apply to provocative act murder. Defendant takes the position that the doctrine of provocative act murder "is merely one version of either the natural and probable consequences doctrine or the felony murder rule, both of which are explicitly covered by the new law."

We agree that the summary denial of defendant's petition was erroneous, but for a more straightforward reason – the prosecution has not established as a matter of law that

6

defendant's jury did not rely on the natural and probable consequences doctrine.[6]

## 1. *Applicable Procedures*

Senate Bill No. 1437 (SB 1437) invalidated the natural and probable consequences doctrine as it relates to murder, and narrowed liability for felony murder. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*) review granted Mar. 18, 2020, S260493.) It also enacted section 1170.95, providing a means by which a defendant convicted of murder under prior authority could seek resentencing under the new version of the law.

The appellate courts are not in complete agreement on the procedure trial courts must follow on a petition for resentencing under section 1170.95. (Compare, e.g., *Verdugo, supra,* 44 Cal.App.5th 320, with *People v. Cooper* (2020) 54 Cal.App.5th 106, petn. for review filed Oct. 2, 2020.) Our Supreme Court has granted review in *Verdugo*, among other cases. (E.g., *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.) Until our Supreme Court resolves the issue, this Division has agreed with the procedure set forth in *Verdugo*. (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1177 (*Torres*) review granted June 24, 2020, S296179.) We continue to do so today.

Once a section 1170.95 petition is filed, there follows a multi-step process by which the court first determines whether the petition is facially complete, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility. (*Torres, supra,* 46 Cal.App.5th at p. 1177.)

---

[6] We sought and received letter briefing from the parties on this issue.

7

Among the materials which the court can review at this stage are the prior appellate opinion (*People v. Lee* (2020) 49 Cal.App.5th 254, 263, review granted July 15, 2020, S262459; *People v. Lewis*, *supra,* 43 Cal.App.5th at p. 1136, fn. 7) and the jury instructions given in the defendant's trial. (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.) If the court determines the petitioner is ineligible for relief as a matter of law, the petition is denied at this first stage; if not, the court proceeds to the next step. (*Torres, supra,* 46 Cal.App.5th at pp. 1177-1178.)

At the first stage, the court's inquiry is only whether the defendant is ineligible for relief under section 1170.95 as a matter of law. (*Verdugo, supra,* 44 Cal.App.5th at p. 329.) If, for example, the court's review of the record of conviction necessarily establishes the defendant was convicted on a ground that remains valid after SB 1437's amendment of murder law, the petition may be denied at this stage. (*Id.* at pp. 329-330.) But if the court "cannot rule out the possibility that the jury relied on" a theory invalidated by SB 1437, there is no prima facie ineligibility. (*People v. Offley* (2020) 48 Cal.App.5th 588, 599.)

## 2. *Defendant is Entitled to Relief*

The provocative act murder doctrine has a physical element and a mental one. The physical element is satisfied when the defendant commits an act, the natural and probable consequence of which is the use of deadly force by a third party. (*People v. Mejia* (2012) 211 Cal.App.4th 586, 603.) "With respect to the *mental* element of provocative act murder, a defendant cannot be vicariously liable; he must personally possess the requisite mental state of malice aforethought when he either causes the death through his provocative act or aids and abets in the

8

underlying crime the provocateur who causes the death. [Citation.]" (*Id.* at pp. 603-604.)

Because the mental state of malice required for provocative act murder is personal to the defendant and not vicarious, Division One of this appellate district has concluded that provocative act murders are outside the scope of section 1170.95. (*People v Swanson* (2020) 57 Cal.App.5th 604, 613-614, petn. for review filed Dec. 24, 2020; see also *People v. Johnson* (2020) 57 Cal.App.5th 257, petn. for review filed Dec. 21, 2020; *People v. Lee, supra,* 49 Cal.App.5th at pp. 257, 264-265.) Defendant argues to the contrary, arguing that provocative act murder is simply an application of the natural and probable consequences doctrine.[7]

We need not decide whether section 1170.95 applies to provocative act murder, because, here, defendant's jury was also instructed on natural and probable consequences as a theory of murder. Under the language of the instruction as given (see fn. 5, *ante*), it appears that the jury could have convicted defendant of murder if it was satisfied that defendant committed attempted robbery and burglary as an aider and abettor, and that "the crime of murder charged in Count[] 1 was a natural and probable consequence of the commission of the crime of attempted robbery and burglary." The instruction does not tell the jury that murder under the doctrine of natural and probable consequences means murder of someone other than an accomplice.

The trial court following a hearing may ultimately conclude that the jury found that instruction inapplicable or that the giving of the instruction was harmless error for other reasons.

---

[7] Defendant's opening brief on appeal predated the appellate opinions in *Swanson, Johnson* and *Lee.*

(Cf. *People v. Mejia, supra,* 211 Cal.App.4th at pp. 627-628 [holding it was error, albeit harmless, to instruct on natural and probable consequences in a provocative act murder case].)  But we cannot, at this stage, conclude as a matter of law that the jury did not in fact convict defendant on a theory of natural and probable consequences.

## *DISPOSITION*

The order denying defendant's section 1170.95 petition is reversed and the matter remanded with directions for the trial court to issue an order to show cause and hold a hearing on whether defendant's murder conviction should be vacated.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J.

10